United States District Court
Southern District of Texas
**ENTERED**
November 02, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | | |
|---|---|---|
| GLORIA MANNING, *et al.*, | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:21-cv-00132 |
| | § | |
| WALGREEN CO., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER AND OPINION

Defendants Walgreen Co. and Walgreens #4113 (collectively, "Walgreens") have filed a Motion to Exclude Opinions of Plaintiffs' "Safety Expert" Jason T. English ("Motion to Exclude"). *See* Dkt. 21. For the reasons set forth below, I **GRANT** the motion in part and **DENY** the motion in part.[1]

## BACKGROUND

This is a trip-and-fall case. Plaintiff Gloria Manning ("Manning") alleges that, on May 17, 2019, she tripped and fell over an exposed piece of rebar in the parking lot of a store owned by Walgreens. The piece of rebar was intended to secure a wheel stop. According to Manning, the piece of rebar had been exposed in the parking lot for somewhere between four to 24 months, creating a dangerous condition that Walgreens should have remedied long before. As a result of her fall, Manning contends that she suffered significant personal injuries. Manning claims she had to undergo a rotator cuff repair and arthroscopy, and she is currently a candidate for even more extensive surgery.

Manning has designated Jason T. English ("English") to testify as an expert witness at trial. Manning has designated English to "provide expert testimony

---

[1] "A motion to strike expert testimony is a nondispositive matter that can be decided by an order from [a] magistrate judge." *Ortiz v. Minn. Life Ins. Co.*, No. 4:20-CV-00923, 2022 WL 4376406, at *2 n.2 (E.D. Tex. Mar. 11, 2022); *see also Sparling v. Doyle*, EP-13-CV-00323, 2016 WL 236266, at *1–3 (W.D. Tex. Jan. 20, 2016).

regarding the factors contributing to Mrs. Manning's fall, Defendants' actual or constructive knowledge of the dangerous condition, the preventative and/or corrective steps which should have been taken to prevent said fall and the safer alternative and/or corrective actions which should have been taken to prevent said fall." Dkt. 21-1 at 1–2.

English has provided a lengthy report detailing his opinions in this matter. *See id.* at 14–32. The report identifies six specific opinions that English plans on presenting at trial:

1.   Walgreens knew or undeniably should have known of their responsibility to exercise reasonable care to establish, monitor, and maintain their commercial retail premises reasonably free of hazards likely to cause serious physical harm to those persons present on their property, and ultimately failed in their responsibility . . . .

2.   In order to fulfill such responsibility, Walgreens knew or should have known that it is necessary to establish and implement a proper safety program to identify, evaluate, and correct hazards with the reasonable potential to cause serious injury. . . .
     . . . .
     Based on the condition present on the date of this incident, it is apparent that Walgreens failed to establish and/or properly implement an adequate premises safety program for the protection of people present on their property.

3.   In this regard, Walgreens knew or should have been aware that the improper use of wheel stops in parking lots have long been recognized as pedestrian tripping hazards. Properly designed parking lots can be effectively designed to avoid the use of wheel stops . . . .
     . . . .

4.   . . . [Walgreens] failed to develop and implement an adequate inspection and maintenance program to minimize the pedestrian hazard associated with the use of wheel stops. . . .

5.   In conclusion, Walgreens failed to meet the standard of care necessary to provide a reasonably safe premises to prevent the

leading cause of injury to the public, which are fall-type incidents. . . .

6. . . . [I]t is unnatural for people to walk around staring at the ground . . . . Accordingly, the likelihood of a pedestrian missing or failing to identify a hazard such as was present in this matter is rather significant. . . .

[I]t is my opinion the actions of Mrs. Manning leading up to the moment of her fall, were within the actions of a person exercising reasonable care under such circumstances.

Dkt. 21-1 at 21–22, 27–28.

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony and reports. It provides that expert testimony will be allowed if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

District courts act as the "gatekeeper" in making determinations as to the admissibility of expert testimony. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). As a preliminary matter, a district court must determine whether the proffered witness qualifies as an expert "by virtue of his knowledge, skill, experience, training, or education." *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quotation omitted). If the expert is qualified, the "overarching concern" becomes "whether the testimony is relevant and reliable." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019). To be reliable, expert testimony must "be grounded in the methods and procedures of science and be more than unsupported speculation or subjective belief." *Johnson v. Arkema, Inc.*, 685 F.3d

452, 459 (5th Cir. 2012) (cleaned up). To be relevant, the expert's "reasoning or methodology [must] be properly applied to the facts in issue." *Id.* (quotation omitted).

I possess broad discretion in deciding whether to admit expert testimony. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility." *Puga*, 922 F.3d at 294. A district court's role under Rule 702 "is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role—the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration." *Id.* As the United States Supreme Court explained: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. "While the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, 'the rejection of expert testimony is the exception rather than the rule.'" *Puga*, 922 F.3d at 294 (quoting FED. R. EVID. 702 advisory committee's note to 2000 amendment).

## DISCUSSION

### A.    English's Qualifications

Walgreens first argues that English lacks the qualifications to provide any opinions on premises safety, safety management, and fall prevention. Specifically, Walgreens complains that English has (1) no experience managing a retail store; (2) never worked in a safety position for a commercial retailer; and (3) never developed a safety program for a retail store. These objections are spurious. As Manning points out, "English does not need to have worked at a retail facility to opine on the safety of retail parking lots." Dkt. 23 at 16.

English is a licensed professional engineer, holding a B.S. in Industrial Engineering with a specialty in Systems Safety Engineering and an M.S. in Safety

Engineering from Texas A&M University. English has also completed post-graduate coursework from Texas A&M College of Architecture in Means of Egress (Walking/Working Surface Design). He is a member of the American Society of Safety Engineers, Human Factors and Ergonomics Society, National Safety Council, and International Code Council. Since 1999, English has worked as a professional engineering consultant, primarily consulting in the field of safety engineering, including workplace safety, premises safety, product safety, safety management, and human factors/ergonomics. He also serves on several safety standard development committees for the American Society of Testing and Materials International.

The Fifth Circuit has held that "[a]s long as some reasonable indication of qualifications is adduced, the court may admit the evidence without abdicating its gate-keeping function. After that, qualifications become an issue for the trier of fact rather than for the court in its gate-keeping capacity." *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999). Given English's education and relevant experience, I conclude that there is some reasonable indication of English's qualifications as a retail safety expert. His testimony may be admitted at trial, and the jury will determine what weight it should be given.

## B.   Reliability and Relevance of English's Opinions

Walgreens also objects to, and moves to exclude, English's testimony on the basis that his opinions will not assist the trier of fact to decide the premises liability issues present in this case. In Walgreens' view, there are no complex scientific or technical issues that require expert assistance. Although I recognize that, as a general rule, expert testimony is unnecessary when the matter to be determined is in the common knowledge of the jury, I believe that most of English's proposed testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702.

To prevail on her premises liability claim, Manning must establish four elements: (1) Walgreens "had actual or constructive knowledge of the condition

causing the injury"; (2) "the condition posed an unreasonable risk of harm"; (3) Walgreens "failed to take reasonable care to reduce or eliminate the risk"; and (4) Walgreens' "failure to use reasonable care to reduce or eliminate the risk was the proximate cause of injuries to" Manning. *Henkel v. Norman*, 441 S.W.3d 249, 251–52 (Tex. 2014).

For the most part, the topics English plans on testifying about at trial are relevant to the elements of a premises liability claim. For example, English intends to testify that pedestrians, like Manning, frequently fail to see hazards in front of them as they walk. This opinion is relevant to both the second element (whether the exposed rebar posed an unreasonable risk of harm) and the fourth element (proximate causation). English also plans to testify that "[a] national consensus standard" provides that "[p]arking lots should be designed to avoid the use of wheel stops," "[w]heel stops shall not be placed in pedestrian walkways or foreseeable pedestrian paths," and "[w]heel stops shall be in contrast with their surroundings." Dkt. 21-1 at 23. This testimony is directly relevant to the third element of a premises liability claim—whether Walgreens failed to take reasonable care to reduce or eliminate the risk. Similarly, English's proposed testimony that Walgreens should have "establish[ed] and implement[ed] a proper safety program to identify, evaluate, and correct hazards with the reasonable potential to cause serious injury" also addresses the third element. *Id.* at 21.

All that said, the one subject English may not testify about at trial is whether Walgreens actually knew the allegedly dangerous condition existed in the parking lot. He has no expertise or specific knowledge that sheds light on this issue. *See Payne v. Wal-Mart Stores Tex., LLC*, No. MO:18-CV-00224, 2020 WL 4718056, at *4 (W.D. Tex. June 23, 2020) (holding that English did not have the expertise to testify as to the retailer's knowledge of the alleged danger); *Grubbs v. Target Corp.*, No. 3:15-CV-2059-M, 2016 WL 4126395, at *2 (N.D. Tex. Aug. 3, 2016) (same).

6

## CONCLUSION

The Motion to Exclude is **GRANTED** in part and **DENIED** in part. At trial, English may testify as to the subjects identified in his expert report, with one exception. He may not testify on what Walgreens knew.

SIGNED this ____ day of November 2022.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE